# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Cambria Company LLC, | Case No.:  0:12-cv-00228-JRT-AJB |
| Plaintiff, | |
| v. | **DEFENDANT PENTAL GRANITE & MARBLE, INC.'S MEMORANDUM OF LAW SUPPORTING ITS MOTION TO COMPEL ANSWERS TO SECOND SET OF INTERROGATORIES** |
| Pental Granite & Marble, Inc., and Vinaconex Advanced Compound Stone Joint Stock Company, | |
| Defendants. | |

Defendant Pental Granite & Marble, Inc. ("Pental") brings this motion to compel Plaintiff Cambria Company LLC to answer Interrogatories 16-19 and 22-28 in Pental's Second Set of Interrogatories. The interrogatories are relevant to Cambria's claims and Pental's defenses and counterclaim. Cambria should be compelled.

## ISSUES

Cambria sued Pental claiming copyright infringement of its manufactured quartz products and confusion due to alleged similarities in the appearances of its products and those of Pental's products.  Pental seeks discovery regarding Cambria's allegations made in its Complaint, Rule 26(f) Joint Report, and Rule 26(a) Disclosures and supporting Pental's Answer and Counterclaim. Cambria largely refuses to comply.

1.     Cambria alleges that it "authored," "designed," and "manufactured" the allegedly infringed-upon products. (*See* Am. Compl. ¶¶ 6-10 [Doc. 3].)  Pental denies these allegations and instead contends that the "expressions" were randomly made by the machines

that make the goods, and, therefore, that there was neither an "author" nor a "design" and, accordingly, that the alleged copyrights are invalid. (Pental's Answer ¶¶ 6-10, 52, 61, 81-113 [Doc. 109].) Pental seeks discovery of the alleged "authorship," "design," and manufacture of the products. (Thompson Decl., Ex. A at Nos. 16 and 18 (Cambria's Responses to Pental's Second Set of Interrogs., hereafter the "Interrogatories").)

2.      Cambria admits that its products are useful. (Cambria's Answer to Counterclaim ¶¶ 94, 99 [Doc. 116].)  The Copyright Act bars protection for useful articles, except for identifiable features that are separable from and independent of any functional part of the articles. Pental contends that there are no protectable features and that any "expressive" elements are inseparably tied to functional considerations. (Pental's Answer ¶¶ 94-95, 97-107 [Doc. 109].) Pental seeks discovery regarding the expressions and the utilitarian functions of the products. (Thompson Decl., Ex. A at Nos. 16, 19, and 27.)

3.      Pental contends that Cambria gained its copyright registrations due to a fraud on the Copyright Office. (Pental's Answer ¶ 53 [Doc. 109].) Pental seeks discovery of all communications between Cambria and the Copyright Office. (Thompson Decl., Ex. A at No. 17.) Those communications are also relevant to the weight to be given to the copyright registrations under 17 U.S.C. § 410(c).

4.      Moreover, all communications between the Copyright Office and Cambria relating to Cambria's 64 more recent copyright applications, which relate to its similarly-manufactured products, are relevant. Questions that the Copyright Office may be investigating as to the 64 new applications are relevant to the extent that those products share

2

the same issues with respect to whether there are human "authors," whether there was a "design," whether there are separable features independent of the functional aspects of the goods, whether Cambria engaged in a fraud on the Copyright Office, and whether the products mimic the look and feel of natural stone or other products in the marketplace. For the same reasons, the "authorship," that is, the manufacture of these 64 goods, is relevant to the extent that the manufacturing processes are similar to the manufacture of the 3 products at issue. Moreover, Cambria opened the door to discovery relating to these 64 applications by affirmatively raising these applications in the Joint Rule 26 Reports, briefing and the Amended Complaint. (E.g., Joint Rule 26(f) Report at § A(1) [Doc. 22]; Am. Joint Rule 26(f) Report at § A(1) [Doc. 117]; Second Am. Joint Rule 26(f) Report at § A(1) [Doc. 120].) Pental seeks relevant discovery.

5.      Cambria claims lost profits and attorney fees. (Am. Compl. ¶¶ 28, 35-36, 42-43, 48 [Doc. 3].)  Pental seeks discovery regarding the claimed damages. (Thompson Decl., Ex. A at No. 28.)

6.      Cambria identified certain of its employees and officers as witnesses and alluded to categories of information of which they allegedly have knowledge under Rule 26(a)(1). (Thompson Decl., Ex. B at § 1(A).) Pental sought discovery concerning the facts known to these identified witnesses. (Thompson Decl., Ex. A at No. 26.)

7.      Cambria alleged four causes of action. (*See generally* Am. Compl. [Doc. 3].) Pental sought discovery concerning each of the four causes of action. (Thompson Decl., Ex. A at Nos. 22-25.)

Cambria refuses to fully comply. Pental seeks an order compelling answers.

## ANALYSIS

### A.    Federal Rule of Civil Procedure 26 provides for broad discovery.

Federal Rule of Civil Procedure 26 provides for broad discovery. Under Rule 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). As Judge Montgomery recently noted, the rules do not limit discovery to information "relevant to any party's <u>undisputedly viable</u> claim or defense"; rather, parties are entitled to discovery regarding **_any_** claim or defense, "even if their opponent has a dim view of those positions." *St. Jude Medical S.C., Inc. v. Biosense Webster, Inc.*, 2013 WL 3899967, *6 (D. Minn. July, 29, 2013) (quoting *Chubb Integrated Sys., Ltd. v. National Bank Wash.*, 103 F.R.D. 52, 59 (D.D.C. 1984)) (emphasis in original).

### B.    Discovery concerning "design," "manufacture," and "authorship."

#### 1.    Relevant claims and defenses.

Cambria and Pental both sell quartz countertops.   (Am. Compl. ¶¶6, 11 [Doc. 3].) Cambria contends that it is "an industry leader in the **design and manufacture** of natural quartz surfacing products." (*Id.* at ¶6 (emphasis added).) Cambria further alleges that it "is an innovator in creating original, unique and distinct designs," and that it's "works of authorship include, without limitation, its copyrighted" Canterbury, Lincolnshire, and Windermere "Quartz Material Design." (*Id.* at ¶7.) It also alleges that its products "consist of wholly original works of authorship and are copyrightable subject matter…." (*Id.* at ¶24.)

4

Pental denies that Cambria has any "designs" or "works of authorship" and denies that Cambria "designed" or "authored" the products at issue. (*See, e.g.*, Def. Pental's Answer and Countercl. ¶¶7, 13, 18-20, 50, 108-113 [Doc. 109][1].) Pental alleges:

> 92.   There is no authorship of any discernible pattern or design in Cambria's products.  Instead, on information or belief, the look of the products depicted in the deposits it filed with the United States Copyright Office relative to United States Copyright Registration Nos. VA0001797761 (Canterbury), VA0001799252 (Lincolnshire), and VA0001799251 (Windermere) is the random result of the Breton machine and its associated manufacturing process and, at least to a necessary extent, formulas.  Any alleged artistic judgment is constrained and dictated by functional considerations and the expected characteristics of the natural stone that the Cambria products intend to mimic.

(*Id.* at ¶92.) Pental counterclaims that the copyrights are invalid due to a lack of "authorship" and that the machinery created the appearance of the products, not Cambria, such that Cambria is not an "author." (*Id.* at ¶¶108-113.)

Cambria's Rule 26 initial disclosures identify "[d]ocuments relating to the creation and manufacture of [Cambria's] original copyrighted manufactured quartz designs" as being relevant to its claims in this lawsuit. (Thompson Decl., Ex. C at §II(D).) Further, Cambria admits that the look of samples of its products – not just the deposits at the U.S. Copyright Office – are relevant and might be used to support Cambria's claims in this lawsuit. (*Id.* at §II(B); Thompson Decl., Ex. B at §II(B).)

---

[1]  Pental denies that Cambria is the industry leader or that Cambria holds the intellectual property related to these products; and alleges that Breton S.p.A. is the industry leader and owns the intellectual property, which Breton licensed such to Vicostone. (*Id.* at ¶6.)

## 2. Discovery at issue.

Pental seeks discovery regarding Cambria's purported manufacture, design, and authorship of the products as well as facts establishing the separateness of expression from their utilitarian function:

## INTERROGATORY 16:

State in detail all facts relating to the authorship, inspiration, research, creation, development, conceptualization, and design of Cambria's Canterbury, Lincolnshire, and/or Windermere registered works, including but not limited to: design discussions and strategies; all variations of component formulations (e.g., amount of quartz, amount of each pigment, amount of resin, and so forth) used in developing and designing the product; all software settings; the identities of all machinery used; and the identification of all alleged trade secrets and proprietary information used in product development, design and manufacture. This interrogatory also includes, but is not limited to, the identities (by name, address, telephone number, occupation, business, and email address) of each witness with any knowledge concerning those facts; the identities of each and every author; and the identities of all documents constituting, disclosing, discussing or relating to those facts.

## CORRECTED ANSWER:

In addition to the General Objections, Cambria objects to this Interrogatory as compound and containing multiple subparts each of which count toward the number of interrogatories allowed under the Federal Rules of Civil Procedure and the Discovery Order. Cambria further objects to this Interrogatory as overbroad and unduly burdensome, particularly with respect to the terms "all facts relating to the authorship, inspiration, research, creation, development, conceptualization, and design," "all variations of component formulations," "all software settings," "the identities of all machinery used," and "all alleged trade secrets and proprietary information used in product development, design and manufacture." Cambria further objects to this Interrogatory as seeking information that is not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. Cambria further objects to this Interrogatory on the grounds that it expressly seeks the identification of "all alleged trade secrets and proprietary information used in product development, design and manufacture." See Doc. 100 at 2-3 and Doc. 124 at 5-6.

Subject to and without waiving the foregoing general and specific objections, Cambria responds as follows: Cambria states that it is the author of the Canterbury, Lincolnshire, and Windermere designs. Cambria, as a matter of law, is the author of the copyrighted works prepared by Cambria employees in the scope of their employment pursuant to 17 U.S.C. §§ 101; 201(b) ("In the case of a work made for hire, the employer...is considered the author...."). It is irrelevant which specific Cambria employees participated in the creation of the copyrighted works because Cambria, by operation of law, is the author. Cambria refers Pental to the registrations of Cambria's copyrighted works as registered with the United States Copyright Office, which identify Cambria Company LLC as the author of the Canterbury, Lincolnshire, and Windermere designs. Cambria's copyright registration certificates serve as prima facie evidence, not only of the validity of Cambria's copyrights, but also of the facts stated in the certificate of registration. 17 U.S.C. § 410(c). Cambria's certificates of registration properly identify Cambria as the author of its copyrighted works. Cambria identifies the following persons as being involved in creating, developing, and designing Cambria's Canterbury, Lincolnshire, and Windermere designs: Marty Davis, Summer Kath, Jon Grzeskowiak, and Brian Scoggin. This response is made based on information presently known to Cambria and is made without prejudice to Cambria's right to amend and/or supplement this response.

(Thompson Decl., Ex. A at No. 16.)

### 3.    Reasons for compelling further answer.

The interrogatory is relevant to the allegations in the Complaint and Answer concerning Cambria's "design," "authorship," and "manufacture" of the products.

As with its other responses, Cambria makes rote objections that cannot defeat the discovery. First, Cambria asserts that the interrogatory is compound such that it constitutes several interrogatories. But the interrogatories each seek single categories of information. They should each "count" as a single interrogatory. As per the official commentary to the 1993 amendments to Fed. R. Civ. Pro. 33(a), "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the

time, place, persons present, and contents be stated separately for each such communication." And even if an interrogatory constituted multiple parts, those parts must be answered until the maximum number of interrogatories is reached: Cambria simply refuses to substantively answer the interrogatories. Cambria cannot claim "harassment": it has refused to provide virtually any information in response to nearly every interrogatory propounded to date, has not produced even the most basic documentation, such as the copyright applications, certificates or deposits, and failed to fully comply with Rule 26(a)(1), which was supposed to make the limitation on the number of interrogatories appropriate.

Second, Cambria asserts that the interrogatory is "overbroad" and "burdensome." The objection is without merit. Cambria is perfectly positioned to provide the requested information concerning its own manufacturing operations.

Third, Cambria objects that the discovery seeks trade secrets. Trade secrets are not exempt from discovery. *St. Jude Med., Inc. v. Intermedics, Inc.*, 107 F.R.D. 398, 400 (D. Minn. 1985). When parties stipulate to a protective order with an "Attorneys' Eyes Only" designation, then "even a very sensitive trade secret will be sufficiently protected and should be produced if relevant." *Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 501 (D. Minn. 2011). The parties to this litigation contemplated the disclosure of trade secrets and the Court entered a protective order.  (Protective Order at ¶5 [Doc. 48].)

Fourth, Cambria's objections cite to the Court's order denying certain similar discovery. However, in affirming the denial of Pental's Interrogatories 2-5, the District Court held that the denial was based on the limited scope of discovery in light of the fact that Pental

had not, at that time, filed its Answer and Counterclaim.  (Order of Mar. 5, 2013 at 4-5 [Doc. 124].) The District Court noted that the relevance of at least one interrogatory (regarding the persons who manufactured the products) was "more apparent" in light of the Answer and Counterclaims, and more generally stated that the "Magistrate Judge has broad discretion to manage the discovery process … **including revisiting these issues if Pental makes further requests related to the defenses identified in its more recent pleadings**." (*Id.* (emphasis added).)

Fifth, Cambria's response that the Copyright Certificate and the work-for-hire doctrine "prove" its authorship such that it need not comply with discovery is meritless. Registration is only "prima facie" evidence, subject to rebuttal:

(c)      In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

17 U.S.C. §410(c). And the "weight" accorded to a Copyright Certificate is minimal exactly because the Copyright Office typically does little investigation.

As the Register's letter to this Court explains, however, the Copyright Office's examination of copyright applications is "necessarily limited," and should be "distinguished from the Patent and Trademark Office's process for issuance of patents[.]" "[T]he Office does not make factual determinations with respect to publication or any other act done outside of the Office"

***

"[A] certificate of registration creates no irrebuttable presumption of copyright validity. Extending a presumption of validity to a certificate of copyright merely orders the burdens of

9

> proof."... Furthermore, "where other evidence in the record casts
> doubt on the question, validity will not be assumed."…

"[A]ll that the statutory presumptions flowing from the certificates of
registration do is to shift the burden of going forward."

*Estate of Hogarth v. Edgar Rice Burroughs*, 342 F.3d 149, 166-67 (2d Cir. 2003) (citations

omitted); *Entm't Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1217-18 (9th

Cir. 1997) ("To rebut the presumption, an infringement defendant must simply offer some

evidence or proof….").

And the work for hire doctrine is immaterial: Pental contends that neither Cambria nor

its employees "designed" or "authored" the goods.  (Pental's Answer ¶¶7, 13, 18-20, 50, 108-

113 [Doc. 109].)

Finally, sixth, Cambria asserts that the discovery is not relevant. This objection is

meritless. Copyright extends only to original "writings" by "authors," not to ideas or non-

"authored" industrial production. *U.S. Const.*, art. I, §8, cl. 8; 17 U.S.C. §102(a)-(b). The

discovery is relevant to determining whether the works qualify as "writings" by an "author"

and, therefore, whether they are copyrightable. And, as explained further below, the design

and manufacture of the goods is relevant to whether Cambria designed separable features

wholly independent of the functional aspects of the goods.

The copyright and patent clause of the United States Constitution reads:

> The Congress shall have Power ... To promote the Progress of Science and
> useful Arts, by securing for limited Times to Authors and Inventors the
> exclusive Right to their respective Writings and Discoveries.

*U.S. Const.*, art. I, §8, cl. 8. Copyright promotes the arts by securing to "authors" the exclusive right to their "writings." Patents promote science by securing to inventors the exclusive right to discoveries. Copyright protection for works for hire lasts for 95 years from first publication or 120 years from creation, 17 U.S.C. §302(c), while patent protection lasts only 20 years, 35 U.S.C. §154(a)(2). As one court noted, "[t]his limitation [on providing copyrights for useful articles] is in keeping with the notion that functional items are not eligible for the relatively long-term protections of copyright, as opposed to the more temporary rights provided by the Patent Act." *Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 328 & n.2 (2d Cir. 2005). As the United States Supreme Court emphasized in the similar context of the noncopyrightability of ideas or facts:

> It may seem unfair that much of the fruit of the compiler's labor may be used by others without compensation. As Justice Brennan has correctly observed, however, this is not "some unforeseen byproduct of a statutory scheme." *Harper & Row*, 471 U.S., at 589, 105 S.Ct., at 2245 (dissenting opinion). It is, rather, "the essence of copyright," *ibid.*, and a constitutional requirement. The primary objective of copyright is not to reward the labor of authors, but "[t]o promote the Progress of Science and useful Arts."

*Feist Publs., Inc. v. Rural Telephone Serv. Co.,* 499 U.S. 340, 349-50 (1991) (citations omitted).

To be protectable under copyright, the expression must be that of a human author, not the result of mechanical manufacture:

> 503.03(a) Works-not originated by a human author.

> In order to be entitled to copyright registration, a work must be the product of human authorship. Works produced by mechanical processes or random selection without any contribution by a human author are not registrable. Thus, a linoleum floor covering featuring a multicolored pebble design which was

produced by a mechanical process in unrepeatable, random patterns, is not registrable….

*Compendium II of Copyright Office Practices* §503.03 (Appendix of Unpublished Authority, Ex. 1); s*ee also* GOLDSTEIN §2.2.2 (Appendix of Unpublished Authority, Ex. 2); 2 PATRY ON COPYRIGHT §3:19 & n.1 (Appendix of Unpublished Authority, Ex. 3); *Cf. Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 737 (1989) ("As a general rule, the author is the party who actually creates the work, that is, the ***person*** who translates an idea into a fixed, tangible expression entitled to copyright protection."); 17 U.S.C. §302(c) ("Copyright … endures for a term consisting of the life of the author and 70 years after the author's death…."). The "multicolored pebble design" for a floor covering identified as being uncopyrightable in §503.03 of the *Compendium II* does not differ from the countertops at issue here. Both are the product of the manufacturing process. An "author" is the human who actually fixes the expression in a tangible medium.[2] A manufactured good whose expression is fixed by a machine is not copyrightable.

This case is similar to *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 302, 303 (7th Cir. 2011), in which the court noted that "'authorship is an entirely human endeavor.' [Citation

---

[2]  *See generally Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1071 (7th Cir. 1994) (person fixing ideas in tangible expression is an author); *Childress v. Taylor*, 945 F.2d 500, 507 (2d Cir. 1991) (expression must be fixed before creator is an "author"); *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir. 1990) (person must translate ideas into copyrightable expression to be an author); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1086-87 (9th Cir. 1989) ("[t]o be an author, one must supply more than mere direction or ideas; one must 'translate [ ] an idea into a fixed tangible expression entitled to copyright protection.'"); *Riley Home Bldg. Corp. v. Cosgrove*, 864 F. Supp. 1034, 1037 (D. Kan. 1994); *Balkin v. Wilson*, 863 F. Supp. 523, 527-28 (W.D. Mich. 1994); *Meltzer v. Zoller*, 520 F. Supp. 847, 857 (D.N.J. 1981).

omitted] Authors of copyrightable works must be human…." In *Kelly*, the Seventh Circuit ruled that, even though the plaintiff designed the garden and selected the flowers, he was not an "author" because the actual expression resulted from the growth of the flowers:

> Of course, a human "author" – whether an artist, a professional landscape designer, or an amateur backyard gardener – determines the initial arrangement of the plants in a garden. This is not the kind of authorship required for copyright. To the extent that seeds or seedlings can be considered a "medium of expression," they originate in nature, and natural forces not the intellect of the gardener – determine their form, growth, and appearance.... Its appearance is too inherently variable to supply a baseline for determining questions of copyright creation and infringement....

*Id.* at 303; s*ee also Stuart Enter., Inc. v. Am. Games, Inc.*, Civ. No. 1-96-CIV-90036 at *15-16 (S.D. Iowa Mar. 1998), *aff'd*, 205 F.3d 1347 (8th Cir. 1999) (plaintiff's computer program selected 9000 "optimal" sets of numbers out of 111 quadrillion possibilities to create Bingo cards; but Defendant granted summary judgment because the plaintiff was not an "author" because the program selected the numbers) (Appendix of Unpublished Authority, Ex. 4).

Cambria's products are not "authored." They are like chocolate chip cookies or fruit bread. There is a recipe and plaintiff's employees put the ingredients in the mixing bowls; but the actual expression is determined by mixing up the ingredients in two to four giant mixing bowls containing thousands of tons of raw material that is then mixed and mashed together in a random and non-replicable manner along multiple conveyor belts, a mixing ring, and through vacuum compression. The actual expression results from the machinery, not a human "author." It is an industrial product, not a "writing." It is not protectable in copyright. And Breton, which is Vicostone's licensor, owns the patents, not Cambria.

Pental is entitled to discover the details of the manufacture of the products, which is relevant to these claims, defenses and counterclaims.

**C.   Separation of utilitarian aspects from "work."**

      **1.   Relevant claims and defenses regarding useful articles.**

Cambria pleads that its products have various useful functions and "superior performance" due to its strength, durability, being nonporous, non-absorptive of food or liquid, and being maintenance free. (Am. Compl. ¶6 [Doc. 3].)

Pental alleges that any expressions in the Cambria products are inseparable from the utilitarian functions of the products. (Pental's Answer ¶57 [Doc. 109].) Pental alleges:

> 94.   Cambria's Canterbury, Lincolnshire, and Windermere products are useful articles because they have an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. Specifically, Cambria's Canterbury, Lincolnshire, and Windermere products are created from crushed quartz and resin and are intended to be used as building construction materials, including countertops. The crushed quartz and resin provide the articles with structure, strength, and durability and any purported artistic judgment is constrained and dictated by functional considerations.

> 95.   Cambria's Canterbury, Lincolnshire, and Windermere products lack pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the articles. The materials that make up the appearance of the articles cannot be removed, and thus are not physically separable, without destroying the article's utilitarian purpose because there would no longer be a usable surface. Further, the look of Cambria's products is driven and constrained by utilitarian concerns, and therefore, any pictorial, graphic, or sculptural features are not conceptually separable.

(*Id.* at ¶¶ 94-95.) Pental also alleges:

> 90.   Upon information and belief, Cambria represents that its "unique process results in a natural stone product . . . ." This process, which actually

14

belongs to Breton, consists of combining pure quartz with a small amount of pigment and resin by way of a process, method, machining, and formula developed by Breton, which was licensed to Pental's supplier.   To be functional, the combination of materials must fall within a narrow range of each component.

(*Id.* at ¶ 90.) Pental seeks a judgment of invalidity based in part on the inseparability of expressions from the utilitarian aspects of the goods. (*Id.* at ¶¶ 97-102.)

### 2.      Discovery at issue regarding useful articles.

Pental seeks discovery of the copyrightable expressions that are separable from the utilitarian functions and how they are separable. (Thompson Decl., Ex. A at No. 19.)

### INTERROGATORY 19:

State separately how each and every one of the allegedly copyrightable elements of expression in Cambria's Canterbury, Lincolnshire, and Windermere products or works are separable from the utilitarian function of those products or works and are separable from the idea of those products or works.

### CORRECTED ANSWER:

In addition to the General Objections, Cambria objects to this Interrogatory as compound and containing multiple subparts each of which count toward the number of interrogatories allowed under the Federal Rules of Civil Procedure and the Discovery Order. Cambria further objects to this Interrogatory as vague and ambiguous, overbroad, and unduly burdensome, particularly with respect to the terms "each and every one of the allegedly copyrightable elements of expression," "are separable from the utilitarian function of those products or works," and "are separable from the idea of those products or works." Cambria further objects to this Interrogatory as seeking information that is not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. See Doc. No. 100 at 4 ("The Court finds no relevant case law support for Pental's argument that Cambria must in an interrogatory break down the separable copyrightable elements of its overall copyrighted design."); see also Doc. No. 124 at 7. Cambria further objects to this Interrogatory to the extent it calls for

legal conclusions and/or expert testimony and to the premature nature of this request given the stage of this case.

 Subject to these objections and the General Objections, Cambria states that the conceptual separability as well as the physical separability are demonstrated by the images that depict the designs outside of a hard surface. Cambria states that a thin slice of the design could be taken from one of its slabs if such tooling was available. Further, the design is conceptually separable from the utilitarian function of a countertop. Just as a painting on the surface of a countertop or embedded under a clear coating on a countertop would be conceptually separable from the fact that a countertop is a flat, hard surface, so too is Cambria's design separable. The usefulness of a countertop is that it provides a hard working surface. That utility has nothing to do with the designs embedded in or depicted on the countertop. This response is made based on information presently known to Cambria and is made without prejudice to Cambria's right to amend and/or supplement this response.

(*Id.* at No. 19.)

Moreover, the methods of manufacture are part of the utilitarian aspect of the products, which results in the useful characteristics of strength, non-porousness, non-absorption, and near indestructibility. That method of manufacture requires the clumping of the pulverized quartz, which lumps *are* the appearance of the product. Thus, Pental again seeks discovery regarding the manufacturing process. *Supra* p. 6 at Interrogatory 16.

### 3. Reasons for compelling.

With respect to the rote objections, Pental incorporates its responses at pages 7-9, *supra*. As for Cambria's quotation from the Court's prior order regarding the First Set of Interrogatories, Pental not only incorporates its prior discussion at pages 8-9 above, but also cites, among the other cases discussed below, *Whimisicality, Inc. v. Rubie's Costume Co., Inc.*, 891 F.2d 452, 455 (2d Cir. 1989) ("[U]seful articles standing alone may never be

registered. **The registration must describe the separable elements**. *See Compendium II of Copyright Office Practices* §505.02 (1984).") (emphasis added).

The Court should first note that while Cambria loosely refers to its "design" as filed with the Copyright Office, it has not produced whatever was deposited with the Copyright Office.

More importantly, a "design" in a "useful article" is protected only if and to the extent that, "such design incorporates pictorial, graphic, or sculptural features **that can be identified separately from, and are capable of existing independently of**, the utilitarian aspects of the article." 17 U.S.C. §101 (emphasis added).

> "Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; **the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.**
>
> ***
>
> A "useful article" is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a "useful article".

*Id.* (emphasis added). This language was introduced in order "to draw as clear a line as possible between copyrightable works of applied art and uncopyrighted works of industrial design." H.R. Rep. No. 1476, 94th Cong., 2d Sess. 54-55 (1976), reprinted in 1976 U.S. Code Cong. & Admin. News 5659, 5667. (Appendix of Unpublished Authority, Ex. 5).

Cambria must identify separately the allegedly protectable features from the utilitarian aspects of the article, and explain how they are capable of existing independently therefrom. Cambria's only answer is that the separate expressions are "demonstrated by the images that depict the designs outside of a hard surface" and "Just as a painting on the surface of a countertop or embedded under a clear coating on a countertop would be conceptually separable from the fact that a countertop is a flat, hard surface, so too is Cambria's design separable." That answer is meaningless. Cambria must identify what the "design" or "image" is that constitutes the "pictorial, graphic, or sculptural **features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article**."

Pental contends, while seeking confirming discovery, that the powdered quartz is mixed with resin and dyes in up to four giant mixing bowls, containing thousands of tons of raw material; the resin causes the powdered quartz and dye to form clumps; those clumps are discharged onto a conveyor belt through rollers that merely restrict the maximum size of the clumps from each bowl; because of the soft, malleable condition of the resulting lumps, they change in shape each time they are discharged onto a belt; the lumps from the four bowls are mixed in the mixing ring, which again randomly alters the appearance of the lumps; the mixed material is discharged onto a second belt, upon which the lumps can again change in shape; the lumps are vacuum-compressed to form the slabs, at which time they are again mixed and randomly altered in shape; and then they are heat-treated and polished. There is no control over the absolute sizes or shapes of the lumps, only the ingredients. And there is no

"design," pictorial, graphic, or sculptural, that is affixed to the slab or embedded on it. Rather, the countertop itself is its "expression" and it is a random result of the manufacturing process. What one sees when looking at the countertop is the aggregation of the lumps of pulverized quartz, dye, and resin, which *is* the countertop and accounts for the countertop's hardness, non-absorptive qualities, heat-resistance, and near indestructibility.

There is no Mickey Mouse painting under a clear coat nor is there any "image" embedded or carved onto the surface of the Cambria countertops, as Cambria suggests by innuendo. What one sees when one looks at the Cambria countertop is the very clumping of the mixed and compressed material that constitutes the countertop itself: it runs right through the countertop from bottom to surface. The countertop is inseparable from any purported "design" and there is no "image" capable of independent existence from the countertop. There are no "**sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.**" 17 U.S.C. §101 (emphasis added).

The "sculptural features" must be entirely independent of any functional consideration in the manufacture of the useful article: there must be an identifiable and independently separable feature aside from the overall aesthetics of the good for copyright protection to be had. Indeed, "if design elements reflect a merger of aesthetic and functional considerations, the artistic aspects of a work cannot be said to be conceptually separable from utilitarian elements." *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1145 (2d Cir. 1987) (holding that bicycle rack was not copyrightable). *See Carol Barnhart Inc. v. Economy*

19

*Cover Corp.*, 773 F.2d 411, 419 (2d Cir. 1985) (features were "inextricably intertwined with the utilitarian feature, the display of clothes"); *Magnussen Furniture v. Collezione Europa USA*, 43 U.S.P.Q.2d 1218, 1220 (4th Cir. 1997) (tables with features suggesting flowers, fountains and waves not copyrightable); *Superior Form Bldrs. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 493 (4th Cir.), *cert. denied*, 519 U.S. 809 (1996) (unique, aesthetically pleasing chair not copyrightable); *OddzOn Prods., Inc. v. Oman*, 924 F.2d 346 (D.C. Cir. 1991) (KOOSH ball not copyrightable); *Fabrica Inc. v. El Dorado Corp.*, 697 F.2d 890, 893-94 (9th Cir. 1983) (distinctive carpet sample book not copyrightable); *Norris Indus., Inc. v. ITT Corp.*, 696 F.2d 918 (11th Cir. 1983), *cert. denied*, 464 U.S. 818, 922-24 (1983) (wire spoke car wheel covers not copyrightable); *Esquire, Inc. v. Ringer*, 591 F.2d 796, 803-05 (D.C. Cir. 1978), *cert. denied*, 440 U.S. 908 (1979) (outdoor lighting fixtures not copyrightable); *Jovani Fashion v. Cinderella Divine*, 808 F. Supp. 2d 542, 549-50 (S.D.N.Y. 2011) (dress design features not copyrightable).

Cambria's deferring to the overall appearance of the countertops in the interrogatory response is improper. It must identify the "pictorial, graphic or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."

Pental is entitled to the discovery relating both to the allegedly separable "features" that are independent of the functional considerations, and to the manufacturing process, which is relevant to determining whether "design elements reflect a merger of aesthetic and

functional considerations" or "design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences."

### D.    Copyright registrations and communications related thereto.

#### 1.    Relevant claims and defenses.

Cambria alleges that it "sought and received copyright registrations" for the Canterbury, Windermere and Lincolnshire goods. (Am. Compl. ¶9 [Doc. 3].) Cambria further alleged that it's "works of authorship **include, without limitation**" those three products, which works of authorship have become recognizable throughout the industry. *Id.* at ¶7-8. It alleges that "Defendants' copying of Cambria's works of authorship…creates a high likelihood of confusion…." *Id.* at ¶18.

Cambria alleged in the Joint Rule 26(f) Report that "Cambria is in the process of obtaining sixty-four (64) additional federal copyright registrations…, many of which are infringed by various Chroma Quartz by Pental designs." (Joint Rule 26(f) Report at §A(1) [Doc. 22]; *see also* Am. Joint Rule 26(f) Report at §A(1) [Doc. 117]; Second Am. Joint Rule 26(f) Report at §A(1) [Doc. 120]); Opp. to Mot. Dism. at 3 [Doc. 21]; Mot. to Compel at 3 [Doc. 57].

Pental alleges that Cambria committed a fraud on the Copyright Office. (Def. Pental's Answer and Countercl. ¶53 [Doc. 109].) Pental further alleges that the copyrights are invalid for several reasons. (*Id.* at ¶¶97-113.) The Copyright Act provides that a copyright registration certificate constitutes "prima facie" evidence.  17 U.S.C. §410(c). But the weight

to be given the certificate is within the court's discretion, *id.*, and is influenced by the information provided to the Copyright Office.

### 2.    Discovery at issue.

Pental seeks all communications between Cambria and the Copyright Office, which are relevant to the claims of registration, fraud on the Copyright Office, invalidity, and the weight to be given to the Copyright Office's findings. (Thompson Decl., Ex. A at Nos. 17-18.)

### INTERROGATORY 17:

Provide the sum and substance and, to the extent possible, the words used, in each and every communication between Cambria (including by or through counsel) and the Copyright Office relating to its copyright registrations and/or applications for copyright registrations for Canterbury, Lincolnshire, Windermere, and the additional applications for copyright registration referenced in Section A(1) of the Amended Joint Rule 26(f) Report and Section A(1) of the original Joint Rule 26(f) Report in this litigation.

### CORRECTED ANSWER:

In addition to the General Objections, Cambria objects to this Interrogatory as compound and containing multiple subparts each of which count toward the number of interrogatories allowed under the Federal Rules of Civil Procedure and the Discovery Order. Cambria further objects to this Interrogatory as overbroad and unduly burdensome, particularly with respect to the terms "sum and substance and, to the extent possible, the words used," "each and every communication," "relating to its copyright registrations and/or applications," and "the additional applications for copyright registration." Cambria further objects to this Interrogatory as seeking information that is not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks information regarding designs not at issue in this litigation.

Subject to and without waiving the foregoing general and specific objections, Cambria responds as follows: Cambria refers Pental to the

registrations of Cambria's copyrighted works as registered with the United States Copyright Office, including the following statements:

1.    Canterbury

•     Title: Canterbury Quartz Material Design.
    Type of Work:    Visual Material
    Registration Number / Date:
        VA0001797761 / 2011-12-28
        VA0001433116 / 2012-07-23
    Registration Note: Supplemented by:
    Description: Electronic file (eService)
    Copyright Claimant: Cambria Company LLC.
    Date of Creation:    2010
    Date of Publication:  2010-09-22
    Authorship on Application: Cambria Company LLC,
    Copyright Note:
        Cambria Company LLC, 704 North Main Street, Attn: Legal Services, Le Sueur, MN, 56058, United States
        See also Canterbury Quartz Material Design; Reg. 2012-07-23; VA0001433116

•     Type of Work:    Visual Material
    Registration Number / Date:
        VA0001433116 / 2012-07-23
        Supplement to: VA0001797761 / 2011
    Title: Canterbury Quartz Material Design / by Cambria Company LLC.
    Notes: C.O. corres.
    Copyright Claimant:
        Cambria Company LLC
    Date of Publication:
        26Aprl 1 (on original appl.: 22Sep10)
    Supplement to Registration:
        VA 1-797-761, 2011
    Names:    Cambria Company LLC

2.    Lincolnshire

•     Type of Work:    Visual Material
    Registration Number / Date:
        VA0001799252 / 2012-01-12
        Supplemented by: VA0001433117 / 2012-07-23

Application Title:     Lincolnshire Quartz Material Design.
Title: Lincolnshire Quartz Material Design.
Description: Electronic file (eService)
Copyright Claimant: Cambria Company LLC.
Date of Creation:      2010
Date of Publication:  2010-09-22
Nation of First Publication: United States
Authorship on Application:
    Cambria Company LLC, employer for hire; Domicile: United
    States; Citizenship: United States. Authorship: 2-D artwork.
Copyright Note:
    See also Lincolnshire Quartz Material Design; Reg. 2012-07-23;
    VA0001433117
Names:         Cambria Company LLC

- Type of Work:        Visual Material
Registration Number / Date:
    VA0001433117 / 2012-07-23
    Supplement to: VA0001799252 / 2012
Title: Lincolnshire Quartz Material Design / by Cambria Company
    LLC.
Notes: C.O. cones.
Copyright Claimant:
    Cambria Company LLC
Date of Publication:
    26Apr1 1 (on original appl.: 22Sep10)
Supplement to Registration:
    VA 1-799-252, 2012
Names:         Cambria Company LLC

3. Windermere

- Type of Work:        Visual Material
Registration Number / Date:
    VA0001799251 / 2012-01-12
    Supplemented by: VA0001433115 / 2012-07-23
Application Title:     Windermere Quartz Material Design.
Title: Windermere Quartz Material Design.
Description: Electronic file (eService)
Copyright Claimant: Cambria Company LLC.
Date of Creation:      2010
Date of Publication:  2010-09-22

24

Nation of First Publication: United States
Authorship on Application:
      Cambria Company LLC, employer for hire; Domicile: United
      States;
      Citizenship: United States. Authorship: 2-D artwork.
Copyright Note:
      See also Windermere Quartz Material Design; Reg. 2012-07-23;
      VA0001433115
Names:      Cambria Company LLC

- Type of Work:      Visual Material
Registration Number / Date:
      VA0001433115 / 2012-07-23
      Supplement to: VA0001799251 / 2012
Title: Windermere Quartz Material Design / by Cambria Company
      LLC.
Notes: C.O. corres.
Copyright Claimant:
            Cambria Company LLC
Date of Publication:
            26Apr1 1 (on original appl.: 22Sep10)
Supplement to Registration:
      VA 1-799-251, 2012
Names:      Cambria Company LLC

Cambria's investigation is ongoing and Cambria will refer Pental to documents regarding Cambria's Canterbury, Lincolnshire, and Windermere copyrighted works that are responsive to this Interrogatory, pursuant to Rule 33(d), once documents are identified through collection, review, and production of documents. This response is made based on information presently known to Cambria and is made without prejudice to Cambria's right to amend and/or supplement this response.

### 3.    Reasons for compelling further answer.

With respect to the rote objections, Pental incorporates its responses at pages 7-9.

With respect to the remainder of the response, Pental is entitled to discover ***all communications*** that occurred between Cambria and the Copyright Office, not just a partial recitation of the online recordation of registration as to three of the works.

During meet and confer discussions on August 28, 2013, Cambria finally agreed to produce additional communications and the deposits at some undisclosed future time, but only those relating solely to the Canterbury, Windermere and Lincolnshire products. Pental objects that a general reference to unknown materials under Rule 33(d), without specification, is improper. Fed. R. Civ. Pro. 33(d)(1). More importantly, Cambria cannot blithely refer to documents that it may one day produce. A Rule 33(d) reference is improper unless Cambria immediately produces the documents referenced. Fed. R. Civ. Pro. 33(d)(2). Cambria has not produced the referenced documents.

Moreover, Cambria refuses to provide any communications relating to the other 64 registrations of similar products that the Copyright Office has not granted. Pental is entitled to the communications between Cambria and the Copyright Office regarding the other 64 registrations referenced in the pleadings, briefs and Joint Rule 26(f) Reports by Cambria. Cambria opened the door.

Moreover, because the products are all similar and are made in a similar manner, the copyright issues should be identical as between the 64 applications and the 3 successful registrations. The communications between Cambria and the Copyright Office may shed considerable light on Cambria's 3 successful applications and on the weight to be given those registrations.

Fraud on the Copyright Office is a legitimate defense to an infringement action, whereby defendant seeks to prove that plaintiff misrepresented or omitted facts in its communications with the Copyright Office. *Whimisicality, Inc. v. Rubie's Costume Co., Inc.*,

26

891 F.2d 452, 455 (2d Cir. 1989) (court found fraud on the Copyright Office because claimant's copyright application listed its work as a "soft sculpture"; had it been properly identified as a useful article, it would have been subjected to a more rigorous test for copyrightability); *Garner v. Sawgrass Mills Ltd.*, 1994 WL 829978, *8 & n.5 (D. Minn. Dec. 22, 1994) ("knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes a reason for holding the registration invalid and thus incapable of supporting an infringement action ... or denying enforcement on the ground of unclean hands."). Even if fraud is not proved, the failure to provide meaningful information remains relevant to determining the weight given to a certificate and even eliminating the presumption of validity. *Family Dollar Stores v. United Fabrics Int'l*, 896 F. Supp. 2d 223, 231 (S.D.N.Y. 2012) (citing *Masquerade Novelty, Inc. v. Unique Indus.*, 912 F.2d 663, 668 n. 5 (3d Cir.1990)).

This defense is particularly appropriate where, as here, the application fails to disclose that the item is a useful article, exactly because useful items are subjected to more rigorous examination. *Whimsicality,* 891 F.2d at 455 ("[U]seful articles standing alone may never be registered. The registration must describe the separable elements. *See Compendium II of Copyright Office Practices* §505.02 (1984)."). The information available proves that Cambria failed to identify its products as being useful articles, subject to the more rigorous review required by 17 U.S.C. §101, and failed to describe the separable elements from the functional aspects of the goods.

Cambria represented the three products for which certificates were issued to be "Visual Material" and "2-D artwork," rather than disclosing that they are three-dimensional countertop slabs made by a machine, which would have triggered a more rigorous examination by the Copyright Office. *Id.; Compendium II of Copyright Office Practices* §§505.02, 503.03 (Appendix of Unpublished Authority, Ex. 1).

Due to the fact that the Copyright Office has not granted the 64 additional copyright applications for at least a year and a half, Pental believes that the Copyright Office learned that Cambria's first three applications were incomplete and that it either denied registration or is conducting an investigation as to the 64 new applications. Either a denial or an investigation would help Pental prove that had Cambria been candid in its first applications, then those applications would have been subjected to a more rigorous examination, and therefore would support Pental's invalidity and/or fraud on the Copyright Office defenses. At the very least, either denial or investigation would destroy any weight to be accorded to the certificates.

Pental is entitled to complete discovery of all communications between Cambria and the Copyright Office.

Cambria refuses to provide any information at all with respect to the 64 additional applications for copyright registration, which are referenced throughout Cambria's prior submissions. Cambria opened the door to this discovery when it disclosed that it would rely upon those 64 additional registration applications. And the fact that these 64 registrations have not resulted in a registered copyright may very well reflect that the Copyright Office has

determined that either Cambria was not candid in the first three registrations or that Cambria is not entitled to copyrights with respect to either these 64 products or, by extension, the three at issue in this lawsuit.

Pental is entitled to all of the responsive discovery: all communications between the Copyright Office and Cambria regarding the 64 registrations identified in its complaint, Rule 26(f) Reports and briefs; and all communications between the Copyright Office and Cambria relating to the Canterbury, Lincolnshire and Windermere, including the registrations and deposits.

### E. Manufacturing Information Concerning the 64 products.

#### 1. Relevant claims and defenses.

As discussed immediately above, Pental seeks discovery concerning the manufacture and registration of the other 64 products that Cambria submitted to the Copyright Office: as it affects the issues of authorship, the weight to be given the three certificates that did issue, and fraud on the Copyright Office. In order to tie the communications between the Copyright Office and Cambria as to these 64 products to the first 3 registrations, Pental seeks to prove that the 64 products were made in a similar manner to the other 3 products.

#### 2. Discovery at issue.

Pental seeks discovery concerning the manufacture and design of these 64 additional "works"; the copyright registration process related thereto; and what that registration process and investigation may reflect upon the registrations of the three products at issue in this litigation. (Thompson Decl., Ex. A at Nos. 17-18.)

**INTERROGATORY 18:**

Identify the principal facts evincing, supporting, or relating to the authorship and all work of authorship of and in the alleged designs by Cambria of the products for which Cambria submitted the additional applications for copyright registration referenced in Section A(1) of the Amended Joint Rule 26(f) Report and Section A(1) of the original Joint Rule 26(f) Report in this litigation, including but not limited to the identities (by name, address, telephone number, occupation, business, and email address) of each witness with any knowledge concerning those facts and identities of all documents constituting, disclosing, discussing, or relating to those facts.

**CORRECTED ANSWER:**

In addition to the General Objections, Cambria objects to this Interrogatory as compound and containing multiple subparts each of which count toward the number of interrogatories allowed under the Federal Rules of Civil Procedure and the Discovery Order. Cambria further objects to this Interrogatory as vague and ambiguous, overbroad, and unduly burdensome, particularly with respect to the terms "principal facts evidencing, supporting, or relating to the authorship," "all work of authorship of and in the alleged designs by Cambria," "of the products for which Cambria submitted the additional applications for copyright registration," "the identities . . . of each witness with any knowledge concerning those facts," and "identities of all documents constituting, disclosing, discussing, or relating to those facts." Cambria further objects to this Interrogatory as seeking information that is not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence, especially because this Interrogatory seeks information regarding only designs not at issue in this litigation.

### 3.     Reasons for compelling further answers.

With respect to the rote objections, Pental incorporates its responses at pages 7-9.

Pental also incorporates its argument at pages 25-28, *supra*. The requested information is

relevant to rebut Cambria's allegations in its complaint, Rule 26(f) Reports, and briefs; to

support the fraud on the Copyright Office and invalidity defenses/counterclaims; and to

assess the weight to be given to the Copyright Office's findings as to the registrations of the

three products at issue. If the registrations of these 64 items are denied or questioned by the Copyright Office, the bases of those challenges would apply equally to Canterbury, Lincolnshire, and Windermere to the extent that they are manufactured in a similar way.

### F.   Discovery related to damages.

#### 1.   Relevant claims and defenses.

Cambria claims lost profits and expenses and seeks compensatory damages and attorney fees. (Am. Compl. ¶¶28, 35-36, 42-43, 48 [Doc. 3].) Cambria also alleges that it "expended a vast amount of resources in creating, marketing, and selling its works of authorship, including" Canterbury, Lincolnshire and Windermere, and that such products "enjoy a highly favorable reputation in the industry and among consumers and have become assets of substantial value." (*Id.* at ¶10.)

Pental denies the claims to damages, challenges the right to recover attorney fees, and alleges that Cambria's lost profits are limited because it lacked adequate manufacturing capacity. (Pental's Answer ¶¶66, 75 [Doc. 109].)

#### 2.   Discovery at issue.

Pental seeks discovery concerning Cambria's purported damages and its claim to attorney fees.  (Thompson Decl., Ex. A at No. 28.) This information is also sought by way of several contention interrogatories, discussed in greater detail below.

**<u>INTERROGATORY 28:</u>**

Calculate your alleged damages and identify all facts, documents and witnesses supporting or relating to those claims to damages.

**<u>CORRECTED ANSWER:</u>**

In addition to the General Objections, Cambria objects to this Interrogatory to the extent it calls for legal conclusions and/or expert testimony and to the premature nature of this request given the stage of this case. Cambria further objects to this Interrogatory as overbroad and unduly burdensome, particularly with respect to the term "all facts, documents and witnesses supporting or relating to those claims to damages."

Subject to and without waiving the foregoing general and specific objections, Cambria responds as follows: Cambria contends that it is entitled to injunctive relief and compensatory damages, including damages based upon a lost profits assessment and, or in the alternative, to damages based upon a reasonable royalty, and attorneys' fees. Cambria identifies Peter Martin and James Ward as knowledgeable about sales and marketing of Cambria's products and Parminder Singh Pental, Gerald Bailey, and Emmanuel Corral as knowledgeable about sales and marketing of Pental's products. Pursuant to Rule 33(d), Cambria refers Pental to the following documents: Pental's answers and supplemental answers to Cambria's Interrogatory Nos. 5, 11-13 and Cambria's answers and supplemental answers to Pental's Interrogatory No. 9. A precise determination of the damages amount(s) can only be made after completion of discovery, including but not limited to discovery on Defendants' sales information, and based upon the opinions of expert witnesses in view of such information. Cambria's investigation is ongoing. This response is made based on information presently known to Cambria and is made without prejudice to Cambria's right to amend and/or supplement this response.

### 3.    Reasons for compelling further answers.

Interrogatory 28 asks that Cambria calculate its alleged damages and identify all facts, documents, and witnesses supporting or relating to those claims to damages. This interrogatory mirrors Federal Rule of Civil Procedure 26(a)(1)(A)(iii), which required Cambria to provide the same information as "early" disclosures. (Thompson Decl., Ex. B; Thompson Decl., Ex. C.)

Cambria generally refers to various documents that do not provide an answer to the interrogatory and do not support the damage claims. Pental certainly cannot divine from the "referenced" documents as easily as can Cambria the alleged damages that Cambria seeks.

Cambria also purports that a "precise determination of the damages amounts can only be made after completion of discovery, including, but not limited to, discovery on Defendants' sales information and based upon the opinions of expert witnesses in view of such information." But Cambria received the Defendants' sales data a year ago. Moreover, if Cambria is seeking damages based upon its own lost profits, it has the necessary information in its possession. It also has possession of all information needed to assess its attorney fee claim. Cambria filed this lawsuit a year and a half ago. The interrogatory is not "premature."

Pental needs this information immediately so that its expert has time to fully evaluate the damages, assist in propounding discovery, study plaintiff's expenses and income, and produce his or her report. That cannot be reasonably done in the one month allowed after Cambria produces an expert report.

Pental is entitled to a calculation of damages to date, including attorney fees, and the identity of all facts, documents, and witnesses supporting the claimed damages.

### G.  Information known to Cambria's witnesses.

#### 1.  Relevant claims or defenses.

Pursuant to Rule 26(a)(1), Cambria identified certain of its employees and officers as trial witnesses and generally alluded to categories of information as to which they allegedly have knowledge. Specifically, Cambria identified the following as having knowledge: Peter

Martin, its Executive Vice President of Sales, Marketing and BPS; Jon Grzeskowiak, its

Production and Process Development Manager; James T. Ward, its Chief Financial Officer;

Summer Kath, its Senior Director of Business Development & Strategic Partnerships; and

Brian Scoggin, its Executive Vice President of Operations. (Thompson Decl., Ex. B, §1(A)

(Cambria's Amended Rule 26(a)(1) Initial Disclosures).) Cambria also stated in the most

general terms the areas of knowledge held by these people. (*Id.*)

**2.      Discovery at issue.**

Pental sought discovery concerning the facts allegedly known to these identified

witnesses in the general areas identified in the disclosures, using the language of the

disclosures specifically in order to avoid meritless objections based on ambiguity.

(Thompson Decl., Ex. A at No. 26.) Cambria objected to the areas of inquiry as being "vague

and ambiguous, overbroad, and unduly burdensome," even though the interrogatory language

was taken directly from Cambria's Rule 26(a)(1) disclosures, and it refuses to answer:

**<u>INTERROGATORY 26</u>**:

> State separately for each of the following witnesses the principal facts
> known to each of them relating to this litigation, including, but not limited to,
> Cambria's design, creation, promotion, manufacture, and sale of Canterbury,
> Lincolnshire, and/or Windermere or any other products at issue in this
> litigation; the originality of Cambria's allegedly copyrighted designs; the
> background, history and market for manufactured quartz products; the alleged
> substantial similarity between Pental's products and Canterbury, Lincolnshire,
> and/or Windermere; Pental's alleged infringement of Canterbury, Lincolnshire,
> and/or Windermere; Cambria's allegedly resulting damages; and Pental's
> promotion of its products, including, without limitation, providing customers
> with a "Chroma Crossover list":
>
> a.      Marty Davis;
> b.      Summer Kath;

34

c.    John Grzeskowiak;
d.    Brian Scoggin;
e.    Peter Martin; and
f.    James T. Ward.

### CORRECTED ANSWER:

In addition to the General Objections, Cambria objects to this Interrogatory as compound and containing multiple subparts each of which should count toward the number of interrogatories allowed under the Federal Rules of Civil Procedure and the Discovery Order. Cambria objects to this Interrogatory to the extent it seeks documents or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege, protection, or immunity. Cambria further objects to this Interrogatory as vague and ambiguous, overbroad, and unduly burdensome, particularly with respect to the terms "the principal facts known to each of them relating to this litigation," "Cambria's design, creation, promotion, manufacture, and sale," "any other products at issue in this litigation," "originality of Cambria's allegedly copyrighted designs," "background, history and market for manufactured quartz products," "substantial similarity," and "Pental's promotion of its products." Cambria further objects to this Interrogatory as seeking information that is not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence.

Cambria further objects to this Interrogatory to the extent it calls for legal conclusions and/or expert testimony and to the premature nature of this request given the stage of this case. Cambria further objects to this Interrogatory in that it improperly and prematurely seeks trial witness statements. Given the highly objectionable nature of the interrogatory, Cambria cannot answer this interrogatory in its current form.

### 3.    Reasons for compelling further answers.

With respect to the rote objections, Pental incorporates its responses at pages 7-8.

More importantly, Cambria identified these witnesses and subject matters in its Rule 26(a)(1)

disclosures. (Thompson Decl., Ex. B; Thompson Decl., Ex. C.) Its refusal to provide the

information is discovery abuse. These people are all employees or officers of Cambria.

Cambria's assertion that the discovery is "premature" a year and a half into a lawsuit that it filed and relating to the knowledge of its own witnesses, is, again discovery abuse. Pental is entitled to the discovery. Its objection that Pental seeks "witness statements" is misdirected. This is not a document request, it is an interrogatory.

### H.    Cambria's Four Causes of Action.

#### 1.    Relevant claims.

Cambria alleged four causes of action. (*See generally* Am. Compl. [Doc. 3].) Pental sought discovery concerning each of the four causes of action. (Thompson Decl., Ex. A at Nos. 22-25.) Cambria also claimed that its products had attained a reputation in the marketplace by sight (apparently secondary meaning) and that Pental caused "confusion" as to the source or origin of the products. (*See* Am. Compl. ¶¶8, 15, 18, 25, 32-34, 40 [Doc. 3].)

#### 2.    Discovery at issue.

Pental seeks discovery of the facts, documents, and witnesses supporting or relating to the four causes of action and these allegations. (Thompson Decl., Ex. A at Nos. 22-25.) Also, in order to prove that Cambria's products have not achieved secondary meaning, Pental seeks to prove that Cambria's manufacturing process is not replicable. (*Id.* at Nos. 16, 18, and 19.)

### INTERROGATORY 22:

> Identify the principal facts that evidence, support, or relate to the First Cause of Action in your First Amended Complaint, including but not limited to the identities (by name, address, telephone number, occupation, business, and email address) of each witness with any knowledge concerning those facts and identities of all documents constituting, disclosing, discussing, or relating to those facts.

**SUPPLEMENTAL ANSWER:**

In addition to the General Objections, Cambria objects to this Interrogatory as compound and containing multiple subparts each of which should count toward the number of interrogatories allowed under the Federal Rules of Civil Procedure and the Discovery Order. Cambria further objects to this Interrogatory as vague and ambiguous, overbroad, and unduly burdensome, particularly with respect to the terms "the principal facts that evidence, support, or relate to," "each witness with any knowledge concerning those facts," and "identities of all documents constituting, disclosing, discussing, or relating to those facts." Cambria further objects to this Interrogatory to the extent it calls for legal conclusions and/or expert testimony and to the premature nature of this request given the stage of this case. Cambria further objects to this Interrogatory as improper because it asks Cambria to set forth all of its evidence given that fact discovery is not complete. The parties have discovery to conduct, depositions to take, and expert discovery has not yet even begun. Cambria further objects to this Interrogatory in that it improperly and prematurely seeks trial witness statements.

Subject to and without waiving the foregoing general and specific objections, Cambria responds as follows: Cambria refers Pental to Cambria's First Amended Complaint, Cambria's Initial Disclosures, Pental's Initial Disclosures, Pental's Interrogatory Responses, and Cambria's Interrogatory Responses. Cambria further refers Pental to Cambria's copyright registrations for Canterbury, Lincolnshire, and Windermere, to Pental's Garnet, Toffee, and Cappuccino products, Pental's Crossover Chart, Pental's website, Pental's purchases of Cambria's Canterbury, Lincolnshire, and Windermere products, Peter Pental's 12/15/11 email talking about Pental's sale of "Cambria look alike colors which have done extremely well in the market." Cambria also refers to Defendant Vicostone's Initial Disclosures, Pental's Amended Disclosures, Cambria's Amended Initial Disclosures, and Vicostone's BQ9310 (Silver Sea), BQ9330 (Oyster), and BQ9340 (Carmen Brown) products, which appear to be alternative names for the accused products. Given that discovery is just beginning, this response is made based on information presently known to Cambria and is made without prejudice to Cambria's right to amend and/or supplement this response.

**INTERROGATORY 23:**

Identify the principal facts that evidence, support, or relate to the Second Cause of Action in your First Amended Complaint, including but not

limited to the identities (by name, address, telephone number, occupation, business, and email address) of each witness with any knowledge concerning those facts, and identities of all documents constituting, disclosing, discussing or relating to those facts.

### SUPPLEMENTAL ANSWER:

In addition to the General Objections, Cambria objects to this Interrogatory as compound and containing multiple subparts each of which should count toward the number of interrogatories allowed under the Federal Rules of Civil Procedure and the Discovery Order. Cambria further objects to this Interrogatory as vague and ambiguous, overbroad, and unduly burdensome, particularly with respect to the terms "the principal facts that evidence, support, or relate to," "each witness with any knowledge concerning those facts," and "identities of all documents constituting, disclosing, discussing or relating to those facts." Cambria further objects to this Interrogatory to the extent it calls for legal conclusions and/or expert testimony and to the premature nature of this request given the stage of this case. Cambria further objects to this Interrogatory as improper because it asks Cambria to set forth all of its evidence given that fact discovery is not complete. The parties have discovery to conduct, depositions to take, and expert discovery has not yet even begun. Cambria further objects to this Interrogatory in that it improperly and prematurely seeks trial witness statements.

Subject to and without waiving the foregoing general and specific objections, Cambria responds as follows: Cambria refers Pental to Cambria's First Amended Complaint, Cambria's Initial Disclosures, and Pental's Initial Disclosures. Cambria further refers Pental to Cambria's copyright registrations for Canterbury, Lincolnshire, and Windermere, to Pental's Garnet, Toffee, and Cappuccino products, Pental's Crossover Chart, Pental's purchases of Cambria's Canterbury, Lincolnshire, and Windermere products, Pental's website, Peter Pental's 12/15/11 email talking about Pental's sale of "Cambria look alike colors which have done extremely well in the market." Cambria also refers to Defendant Vicostone's Initial Disclosures, Pental's Amended Disclosures, Cambria's Amended Initial Disclosures, and Vicostone's BQ9310 (Silver Sea), BQ9330 (Oyster), and BQ9340 (Carmen Brown) products, which appear to be alternative names for the accused products. Given that discovery is just beginning, this response is made based on information presently known to Cambria and is made without prejudice to Cambria's right to amend and/or supplement this response.

## INTERROGATORY 24:

Identify the principal facts that evidence, support, or relate to the Third Cause of Action in your First Amended Complaint, including but not limited to the identities (by name, address, telephone number, occupation, business, and email address) of each witness with any knowledge concerning each of those facts, and identities of all documents constituting, disclosing, discussing or relating to those facts.

## SUPPLEMENTAL ANSWER:

In addition to the General Objections, Cambria objects to this Interrogatory as compound and containing multiple subparts each of which should count toward the number of interrogatories allowed under the Federal Rules of Civil Procedure and the Discovery Order. Cambria further objects to this Interrogatory as vague and ambiguous, overbroad, and unduly burdensome, particularly with respect to the terms "the principal facts that evidence, support, or relate to," "each witness with any knowledge concerning those facts," and "identities of all documents constituting, disclosing, discussing or relating to those facts." Cambria further objects to this Interrogatory to the extent it calls for legal conclusions and/or expert testimony and to the premature nature of this request given the stage of this case. Cambria further objects to this Interrogatory as improper because it asks Cambria to set forth all of its evidence given that fact discovery is not complete. The parties have discovery to conduct, depositions to take, and expert discovery has not yet even begun. Cambria further objects to this Interrogatory in that it improperly and prematurely seeks trial witness statements.

Subject to and without waiving the foregoing general and specific objections, Cambria responds as follows: Cambria refers Pental to Cambria's First Amended Complaint, Cambria's Initial Disclosures, and Pental's Initial Disclosures. Cambria further refers Pental to Cambria's copyright registrations for Canterbury, Lincolnshire, and Windermere, to Pental's Garnet, Toffee, and Cappuccino products, Pental's Crossover Chart, Pental's purchases of Cambria's Canterbury, Lincolnshire, and Windermere products, Pental's website, Peter Pental's 12/15/11 email talking about Pental's sale of "Cambria look alike colors which have done extremely well in the market." Cambria also refers to Defendant Vicostone's Initial Disclosures, Pental's Amended Disclosures, Cambria's Amended Initial Disclosures, and Vicostone's BQ9310 (Silver Sea), BQ9330 (Oyster), and BQ9340 (Carmen Brown) products, which appear to be alternative names for the accused products. Given that discovery

is just beginning, this response is made based on information presently known to Cambria and is made without prejudice to Cambria's right to amend and/or supplement this response.

## INTERROGATORY 25:

Identify the principal facts that evidence, support, or relate to the Fourth Cause of Action in your First Amended Complaint, including but not limited to the identities (by name, address, telephone number, occupation, business, and email address) of each witness with any knowledge concerning those facts, and identities of all documents constituting, disclosing, discussing or relating to those facts.

### SUPPLEMENTAL ANSWER:

In addition to the General Objections, Cambria objects to this Interrogatory as compound and containing multiple subparts each of which should count toward the number of interrogatories allowed under the Federal Rules of Civil Procedure and the Discovery Order. Cambria further objects to this Interrogatory as vague and ambiguous, overbroad, and unduly burdensome, particularly with respect to the terms "the principal facts that evidence, support, or relate to," "each witness with any knowledge concerning those facts," and "identities of all documents constituting, disclosing, discussing or relating to those facts." Cambria further objects to this Interrogatory to the extent it calls for legal conclusions and/or expert testimony and to the premature nature of this request given the stage of this case. Cambria further objects to this Interrogatory as improper because it asks Cambria to set forth all of its evidence given that fact discovery is not complete. The parties have discovery to conduct, depositions to take, and expert discovery has not yet even begun. Cambria further objects to this Interrogatory in that it improperly and prematurely seeks trial witness statements.

Subject to and without waiving the foregoing general and specific objections, Cambria responds as follows: Cambria refers Pental to Cambria's First Amended Complaint, Cambria's Initial Disclosures, Pental's Initial Disclosures, and Pental's answers to Interrogatory Nos. 5 and 11. Cambria further refers Pental to Cambria's copyright registrations for Canterbury, Lincolnshire, and Windermere, to Pental's Garnet, Toffee, and Cappuccino products, Pental's Crossover Chart, Pental's purchases of Cambria's Canterbury, Lincolnshire, and Windermere products, Pental's website, Peter Pental's 12/15/11 email talking about Pental's sale of "Cambria look alike

colors which have done extremely well in the market." Cambria also refers to Defendant Vicostone's Initial Disclosures, Pental's Amended Disclosures, Cambria's Amended Initial Disclosures, and Vicostone's BQ9310 (Silver Sea), BQ9330 (Oyster), and BQ9340 (Carmen Brown) products, which appear to be alternative names for the accused products. Given that discovery is just beginning, this response is made based on information presently known to Cambria and is made without prejudice to Cambria's right to amend and/or supplement this response.

### 3.   Reasons for compelling further answer.

With respect to the rote objections, Pental incorporates its responses at pages 7-9.

Interrogatories 22-25 seek the principal facts supporting Cambria's four causes of action and Pental is entitled to the discovery.  Instead of responding, Cambria generally references various documents, without specification. The factual information – that is to say, the evidentiary information – is not found in these documents, especially with respect to the Second to Fourth Causes of Action.  Pental certainly cannot discern the responsive information as readily as Cambria can. Cambria should be compelled to answer.

Cambria objects that the interrogatories are "premature," which is a common objection to contention interrogatories. Here, however, it is not premature for Cambria to detail the facts, witnesses, and documents supporting a lawsuit that it filed a year and a half ago. Pental is entitled to the discovery.

## CONCLUSION

For the reasons stated above, Cambria should be compelled to respond fully to Interrogatories 16-19 and 22-28 in Pental's Second Set of Interrogatories.

Dated: August 29, 2013.

s/ Jeffrey M. Thompson
Bradley M. Jones (#52413)
Jeffrey M. Thompson (#197245)
John E. Radmer (#0386973)
Anthony J. Alt (#0389884)
MEAGHER & GEER, P.L.L.P.
33 South Sixth Street, Suite 4400
Minneapolis, Minnesota 55402
Tel:   612-338-0661

*Attorneys for Defendant*
*Pental Granite & Marble, Inc.*

\9198310.2